IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Korell Robert Floyd Battle, ) | |
| ) | Civil Action No. 8:07-466-GRA-BHH |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| James R. Metts, Scott ) | |
| McDermoth, Ronald ) | |
| O'Neil, and Christiana ) | |
| Bates, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a prisoner proceeding pro se, brought this action alleging constitutional violations pursuant to 42 U.S.C. § 1983. The matter is before the Court on the defendants' motion for summary judgment. (Dkt. # 43.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on February 14, 2007, seeking damages for alleged civil rights violations.[1] The plaintiff filed an amended complaint on August 16,

---

[1] There is no date on the envelop indicating when it was received by the Lexington County Detention Center mailroom. *Houston v. Lack,* 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court). Therefore, the undersigned is using the date the complaint was postmarked as the date of filing.

2007. On December 17, 2007, the defendants filed a motion for summary judgment. On December 18, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On January 16, 2008, the plaintiff filed a response opposing the defendants' motion.

## **FACTS PRESENTED**

The plaintiff is a prisoner currently being housed at the Lieber Correctional Institution. From October 14, 2006 - May 9, 2007, the plaintiff was housed at the Lexington County Detention Center ("LCDC") as a pretrial detainee. In his amended complaint, he alleges claims for denial of access to the courts based on the denial of a law book that was mailed to him in a package from his aunt, failure to provide free postage, and failure to provide access to an adequate library or assistance from persons trained in the law to assist on pending traffic charges, a "contemplated" civil action against a towing company, and pending felony charges. (Am. Comp. at 3.) He also alleges a claim for violation of his First Amendment free speech rights based upon denial of the law book that was mailed to him in a package from his aunt. (*Id.*)

The plaintiff alleges the defendants have violated his First, Sixth, and Fourteenth Amendment rights. (*Id.*) He is seeking prospective injunctive relief and declaratory relief in the form of an order requiring the defendants to provide an adequate law library, provide inmates paper, pens, notary services, free postage and photocopying, two to three typewriters, allow legal books to be mailed to inmates, allow inmates six hours a

2

day, seven days a week access to the law library, and assign a plain clothes officer to the jail grievance coordinator. (Am. Comp. at 6-7.) He also is seeking compensatory, punitive, and nominal damages against the defendants Metts, O'Neil, and McDermoth in their individual capacities. (*Id.* at 7.)

## DISCUSSION

### INJUNCTIVE RELIEF

Initially, the undersigned notes that the plaintiff's requests for injunctive and declaratory relief should be dismissed. In his amended complaint, the plaintiff seeks certain injunctive and declaratory relief related to the conditions of his confinement at the LCDC. Because the plaintiff was transferred from the LCDC to the Lieber Correctional Institution, as indicated by the Notice of Change of Address filed by the plaintiff (Dkt. # 26), his claims for injunctive relief concerning the conditions of confinement at the LCDC are now moot. *See Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991); *Scurry v. Middleton,* 2007 WL 1068248 at *3 (D.S.C. 2007)(holding that upon the plaintiff's release from the detention center, the plaintiff's request for injunctive and/or declaratory relief was moot). Additionally, the plaintiff has not raised any complaints in this lawsuit about the conditions of his confinement at Lieber. However, because the plaintiff also seeks monetary damages, his entire case is not mooted. *Williams,* 952 F.2d at 823.

The undersigned also recommends the dismissal of the defendant Christiana Bates. In his discussion of whether he has sued the defendants in their individual or official capacities, the plaintiff specifically states that the "[d]efendant Bates is sued in

3

neither capacity for any relief." (Pl.'s Mem. Opp. Summ. J. Mot. at 3.)  Furthermore, in his amended complaint, the plaintiff states that the defendant Bates "is not sued in her official capacity for any injunctive relief, nor sued in her individual capacity for damages." (Am. Compl at 3.)  Finally, the undersigned notes that in the relief section of his amended complaint, the plaintiff seeks only declaratory relief from the defendant Bates. (Am. Compl. 5.)  The plaintiff seeks monetary relief only from the defendants Metts, O'Neil, and McDermoth.  (Am. Compl.)  As it appears the plaintiff is not seeking any monetary relief from the defendant Bates, she should be dismissed.  Furthermore, this action should be dismissed against all the defendants on the merits, as discussed below.

### DENIAL OF ACCESS TO COURT CLAIMS

In his amended complaint, the plaintiff alleged that his constitutional right to access to the courts was violated during his incarceration at the LCDC.  Specifically, the plaintiff asserts that this right was violated when a package which contained a prisoner's self-help book regarding litigation was returned to the sender, his aunt. The plaintiff asserts that by denying him access to this book, the defendants hindered his ability to represent himself in his traffic court cases, denied him the ability to research whether he should proceed pro se on his felony charge, and hindered his efforts to bring a civil action against a truck towing company. Additionally, the plaintiff claims that his right to adequate access to the courts was violated by the fact that he was not given access to a law library because the LCDC does not have a law library. Finally, the plaintiff alleges that he was denied free postage to mail the complaint in this lawsuit.

In order to state a claim of denial of access to the courts, a plaintiff must allege that he had been prejudiced in pursuing non-frivolous litigation concerning his conviction or prison conditions. *Lewis v. Casey*, 518 U.S. 343, 350-53 (1996). The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Id.* at 343. In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris,* 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723-24 (4th Cir. 1989).

A plaintiff must demonstrate that the defendants caused actual injury, such as the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis,* 518 U.S. at 353-54. The actual injury requirement is not satisfied by just any type of frustrated legal claim. Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353-55. The right to access "does not guarantee [prisoners] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims," that "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement," and that "[i]mpairment of any other litigating capacity is simply one of the

5

incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

Further, the Fourth Circuit Court of Appeals has ruled that the United States Constitution does not require every local jail to even have a law library. *agee v. Waters*, 810 F.2d 451, 452 (4th Cir.1987); *Barr v. Williamsburg County*, 2007 WL 666793, at *3 (D.S.C. 2007)(holding "county jails and county detention centers are not required to have law libraries."). "[T]he brevity of confinement does not permit sufficient time for prisoners to petition the courts." *Magee,* 810 F.2d at 452. *See also Cruz v. Hauck,* 515 F.2d 322, 331-333 (5th Cir. 1975)("access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of the State.") Finally, representation by counsel negates a prisoner's claim of inadequate access to the Courts. *Hause v. Vaught,* 993 F.2d 1079 (4th Cir. 1993); *see also,* Frost v. Illes, 2005 WL 3981680 (D.S.C. 2005)(unpublished).

Here, the plaintiff has not shown an actual injury in regard to any of his alleged denial of access claims. As noted above, the plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the unavailability of legal assistance or research materials caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis,* 518 U.S. at 353-54. Absent an actual injury resulting from official conduct, the plaintiff has failed to state such a claim. *Cochran,* 73 F.3d at 1317 (holding dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury).

As for the felony armed robbery criminal cases, the plaintiff was represented by counsel which, as noted above, negates his claim of inadequate access to the courts. *Hause,* 993 F.2d 1079. The plaintiff also contends that he "contemplated" proceeding pro se on the felony charges, but he was denied the ability to research to determine what the Sixth Amendment states and what proceeding pro se really means. (Am. Compl. ¶ 154.)[2]

Longstanding case law in this circuit provides that if a pre-trial detainee has an attorney or is offered counsel but waives his or her right to counsel, he or she has no constitutional right of access to a law library or to legal materials when he or she is a pre-trial detainee. *United States v. Chatman,* 584 F.2d 1358, 1360 (4th Cir.1978). In *Chatman*, the Fourth Circuit concluded that *Bounds* was not applicable to a pre-trial detainee:

> We do not read Bounds to support that conclusion. Bounds was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke post-conviction relief. . . . Bounds, of course, has no direct application to defendant. He was accused of a crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read Bounds to give an option to the prisoner as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that Bounds has any application to the instant case, the United States satisfied its obligation

---

[2]The plaintiff states he believed there was a conflict of interest between himself and the public defenders because after his public defender, Salley Henry, told him he might be facing two hundred years on the felony charges, he "felt like [he] had nothing to lose so I did something very rude and indecent in front of Salley and she got very upset and left." (Am. Compl. at ¶ 150-152.) She refused to continue representing the plaintiff and the case was re-assigned to another public defender Arie Bax. (*Id.* at ¶ 151.)

> under the sixth amendment when it offered the defendant the assistance of counsel which he declined. We so hold

*Id*. at 1360.  Thus, the plaintiff's claim as to any matters pertaining to his felony armed robbery charges are without merit because he was represented by counsel in these pending criminal cases at the time of his incarceration at LCDC.

Additionally, the plaintiff has failed to show any actual injury.  The undersigned notes that the plaintiff specifically states that he is not arguing his counsel was ineffective.  Nor is he challenging his conviction or sentence on the felony charges.  (Am. Compl. at ¶ 170.)  The plaintiff's allegations are not sufficient to allege an actual injury.  *Cochran v. Morris*, 73 F.3d 1310 (4th Cir.1996) (when alleging denial of access to the courts, the prisoner must make specific allegations and must also identify an actual injury resulting from official conduct).  The plaintiff's allegation that he was contemplating proceeding pro se without failing to allege any prejudice which resulted from proceeding with counsel will not support the plaintiff's claim of denial of access.

The plaintiff then alleges that the ability to represent himself in his traffic court cases was hindered by the denial of the law book which was sent to him through the mail by his aunt and the lack of a law library.  The undersigned notes that the plaintiff acknowledges that he has not been convicted of these charges.  However, he contends that based upon his improper arrest for driving under suspension, a search was performed which uncovered "incriminating evidence" which the plaintiff alleges a friend had left in his car.  (Am. Compl. ¶ 123.)  The plaintiff alleges his "friend had hopped out of the car and ran before [the] cop pulled [the plaintiff] over."  (*Id*. at ¶ 123.)  After

8

searching the plaintiff's car, police found $1,500 in cash in a black bag, a mask, a .38 caliber pistol, gloves, and a coat.  (Am. Compl. at ¶ 148.)

The plaintiff states in his amended complaint that the officer stopped him because his car fit the description of one used in a robbery.[3]  After stopping the plaintiff, the officer told the plaintiff that his license had been suspended for failing to pay a reinstatement fee.  (*Id.* at ¶ 120.)  He then placed the plaintiff under arrest for driving under suspension ("DUS") and failing to surrender his license.  Essentially, the plaintiff is arguing he was unlawfully arrested for DUS because his license should have never been suspended and therefore the evidence found in his car pursuant to the inventory search incident to his arrest for DUS could have been suppressed in the felony armed robbery cases.

First, the undersigned notes that even if the plaintiff is never convicted on the DUS charge, it does not mean that the officer did not have probable cause to arrest him for DUS.  The Constitution does not guarantee that only the guilty will be arrested.  *Baker v. McCollan*, 443 U.S. 137, 145 (1979).  The question is not whether there was actually probable cause for the arrest, but whether an objective officer could reasonably have believed probable cause existed.  *Gomez v. Atkins*, 296 F.3d 253, 261-262 (4th Cir. 2002).  Even assuming the plaintiff's license was improperly suspended, which the court is not finding, the officer had probable cause to arrest him when he discovered the suspension after checking the plaintiff's license.  *See Arizona v. Evans,* 514 U.S. 1, 15-16 (1995) (finding, in context of exclusionary rule, there was "no indication that the arresting officer was not acting objectively reasonably when he relied upon the police

---

[3]The plaintiff alleges the officer lied because "no one at K.F.C. saw [his] car which was parked at a gas station ½ block to 1 block away."  (Am. Compl. at ¶ 118.)

9

computer record" in which a clerical error caused to show outstanding misdemeanor warrant, despite warrant's having been quashed two weeks earlier). The arresting officer had probable cause to arrest the plaintiff and subsequently search his car and thus there was no basis for a motion to exclude the evidence discovered during the search in the plaintiff's trial on the felony charges.

The plaintiff also asserts that the lack of access to a law library hindered his ability to sue the tow truck company that towed his car on October 13, 2006. Again, the plaintiff does not assert with any specificity exactly how the purported lack of access to a law library hindered these efforts, nor has he shown any actual injury that resulted from this alleged deprivation. Furthermore, in *Lewis*, the Court held that:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis, 518 U.S. at 355. Therefore, even if the plaintiff was prevented from filing a civil action against the towing company, this would not support a denial of access claim.

As for the plaintiff's allegations that he was denied adequate postage, it is well settled that prisoners do not have an unlimited right to free postage in connection with the right of access to the courts. *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). To state a claim such as this, a prisoner must provide some basis for his allegation that the delay or failure in delivering his legal mail deprived him of meaningful access to the courts. *Id*.

Here, the plaintiff alleges that his cellmate had to mail this § 1983 action because the defendants failed to provide him free postage. (Pl.'s Mem. Opp. Summ. J. Mot. at 5.) While it does appear that another inmate mailed this plaintiff's § 1983 action (Dkt. #1), this would not establish the plaintiff suffered an actual injury to support his denial of access to court claim. The action was filed and the plaintiff has not alleged he missed any deadlines. The plaintiff has simply failed to show an actual injury. He alleges that the "mere risk of prejudice and imminent threat is enough" to state a claim. (Id. at 4.) However, as stated above, the case law requires an actual injury and absent such an injury, a plaintiff has failed to state a claim of denial of access. Here, the plaintiff has failed to allege any actual claim. Based on the foregoing, the defendants should be granted summary judgment on the plaintiff's denial of access claims.

## MAIL CLAIMS

The plaintiff also alleges his First and Fourteenth Amendment rights were violated when the package which contained the law book that was mailed to him by his aunt was not delivered to him and instead was returned to her. The defendants state that LCDC bans packages which are not obviously legal in nature and this policy is set out in the inmate rules. (Defs.' Mem. Supp. Summ. J. Mot. O'Neill Aff. ¶ 7.)

Inmates clearly retain their First Amendment right of free speech in prison. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, in *Turner v. Safley*, 482 U.S. 78 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Id.* at 89. The Court also recognized that deference should be given to the

decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id*.

In *Turner*, the Court identified four factors to consider: (1) Whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) Whether there are alternative avenues that remain open to the inmates to exercise the right; (3) The impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) Whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Id.* at 89-90.

First, the court must determine whether the regulation is rationally related to a legitimate and neutral governmental objective. The Fourth Circuit Court of Appeals frequently emphasizes that great deference must be given to prison administrators with regard to security matters. As the Fourth Circuit has noted:

> In the difficult and dangerous business of running a prison, frontline officials are best positioned to foresee threats to order and to fashion responses to those threats. Hence, the evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination. When a state correctional institution is involved, the deference of a federal court is even more appropriate. Prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir. 1999).

In his affidavit, the defendant Ronald O'Neill states that he oversees the inmate mail at the LCDC. (Defs.' Mem. Supp. Summ. J. Mot. O'Neil Aff. ¶ 3.) O'Neil also states

that the plaintiff was incarcerated the LCDC for 178 days and approximately 88 pieces of mail were sent to the plaintiff and he received all but two pieces of mail.  (Defs.' Mem. Supp. Summ. J. Mot.  O'Neill Aff. ¶ 10 & Ex. C.). The two pieces of mail not delivered to the plaintiff were sent by his aunt because the were packages which are prohibited by the LCDC's policy.

O'Neill states that the LCDC has a policy and procedure for the intake and distribution of mail for inmates which includes a list of certain items which should not be delivered to the inmate, opened or examined by staff.  (Id. at  ¶¶ 4-5.)  Newspapers, magazines, books or packages will not be accepted.  (Id. at ¶ 5.)   Further, packages include padded/bubbled envelopes and oversized envelopes.  (*Id.*)   O'Neill avers that inmates at the LCDC are informed of these restrictions and receive a copy of them upon booking.   (*Id*. At ¶ 6.)    Further, O'Neill avers that mail items which are not delivered to an inmate are returned to the sender's address without examination and a photocopy of the outside of the package is made, forwarded to the inmate for his or her signature, and then retained on file. (*Id*. at ¶ 8.)

O'Neill attests that this policy serves a legitimate penological interest as it prevents the introduction of contraband and weapons into the facility, as well as reducing the risk of fire hazards in the facility due to accumulation of large amounts of paper. (O'Neill Aff. ¶ 8.)  Additionally, O'Neill attests that by refusing to accept packages under the mail policy, the LCDC is able to avoid the extreme administrative cost of carefully searching each and every package that may contain hidden contraband.  (*Id.*)    O'Neill also attests that if an inmate has sent off for a package that he needs for a particular

reason, that inmate can fill out a request to staff asking for pre-approval of the particular package which will be granted if there are compelling reasons and no security risks. (*Id.* at ¶ 12.)

Here, the LCDC policy is rationally related to legitimate and neutral governmental objectives. This policy was adopted to prevent contraband, such as weapons and drugs, from being brought into the LCDC center through the mail. *(Id.)* This policy also reduces the fire hazards within the LCDC by preventing the accumulation of large amounts of paper and other packaging. *(Id.)*

Turning to the second factor in *Turner* and whether there are alternative avenues remaining open for the plaintiff to exercise his rights, the court notes that the LCDC policy does not deprive the plaintiff of all mail. It merely restricts packages. Further, the policy allows for exceptions, and inmates can arrange for pre-approval for the receipt of packages in some extraordinary circumstances. (*Id*. ¶ 12.) Finally, if packages which are sent from a court or an attorney and are obviously legal in nature are delivered to the inmates. (*Id.* ¶ 13.)

The third factor in *Turner* is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." 482 U.S. at 90. The ban reduces the associated administrative costs and burdens that would be occur if packages were allowed into the facility. (Defs.' Mem. Supp. Summ. J. Mot. O'Neill Aff. ¶¶ 13.)[4]

---

[4] Here, the undersigned also notes that the plaintiff did eventually receive the book during a visit from his aunt after he had sought and received prior approval. (Defs.' Mem. Supp. Summ. J. Mot. O'Neil Aff. Ex. D.)

Finally, in assessing whether the presence of ready alternatives undermines the reasonableness of the policy, *Turner* does not impose a least restrictive alternative test. The issue is whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal. *Overton*, 539 U.S. at 136. The Supreme Court described this as a "high standard" to meet. Id. As the Supreme Court has recognized, restrictions on privileges are an effective "management technique" in controlling "high-security prisoners who have few other privileges to lose." *Id.* at 134. The plaintiff has not offered any reasonable alternative.  Based on the foregoing, the court concludes that the LCDC policy is reasonably related to a legitimate penological goal.  Accordingly, the defendants should be granted summary judgment on this claim.

**Qualified Immunity**

Having found that the plaintiff has not raised a viable § 1983 claim, the court need not determine whether any rights the plaintiff has asserted were "clearly established" for purposes of qualified immunity. *See DiMeglio v. Haines*, 45 F.3d 790, 799 (4th Cir.1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question."); *Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir. 1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established.").

15

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 43) be GRANTED.

**IT IS SO RECOMMENDED.**

*Bruce H. Hendricks*
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

May 12, 2008
Greenville, South Carolina


**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).